IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MAO YU,**

      **Plaintiff,**

                        **Case No. 2:16-cv-944**

      v.                    **Chief Magistrate Judge Elizabeth P. Deavers**

**DAVID A. DYE CO., LPA,** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

This case arises out of Plaintiff Mao Yu's purchase of a property at a sheriff's sale and a homeowner's association's lien on that property that was left out of the foreclosure action. Plaintiff sues the homeowner's association, its management company, and its law firm under the Ohio Planned Community Act and the Fair Debt Collection Practices Act. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. With the consent of the parties to the jurisdiction of the United States Magistrate Judge (ECF No. 9), 28 U.S.C. § 636(c), this matter is before the Court for consideration of Defendants' Motion for Summary Judgment (ECF No. 56) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 60), which are both fully briefed. For the reasons that follow, Defendants' Motion for Summary Judgment (ECF No. 56) is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 60) is **DENIED**.

### I.     FACTUAL BACKGROUND

On August 7, 2015, Plaintiff purchased the single-family home located at 120 Vandora Place, Reynoldsburg, Ohio 43068 (the "Property") at an auction held by the Franklin County Sherriff. (Yu Deposition, ECF No. 57 at 66, 71–72; Confirmation Entry, ECF No. 57-5.) A

foreclosure action had been initiated by Wells Fargo against the former owner of the Property on October 14, 2014, resulting in the auction on August 7, 2015. (Complaint in Foreclosure, ECF No. 56-4; Confirmation Entry, ECF No. 57-5.) The foreclosure action did not name Defendant Village at Reynolds Crossing Homeowners Association, Inc. (the "HOA") as a Defendant, despite the former owner of the Property falling behind on her obligations to the HOA as of March 2014. (Complaint in Foreclosure, ECF No. 56-4; HOA Transaction History, ECF No. 57-10.) As of August 1, 2015, $3,449.92 remained due and owing to the HOA from the former owner's failure to pay assessments and late fees (the "Debt"). (ECF No. 56 at 4; HOA Transaction History, ECF No. 57-10.)

On June 27, 2014, the HOA sued the former owner in Franklin County Small Claims Court for those unpaid assessments. (ECF No. 56.) After obtaining a judgment against the former owner and a judgment lien on the Property, the HOA filed an Affidavit of Non-Payment of Assessment Lien (the "Lien") with the Franklin County Recorder's Office on June 9, 2015. (*Id.*; Affidavit of Non-Payment, ECF No. 56-2.) At the time of the foreclosure auction on August 7, 2015, Plaintiff knew there was a lien on the Property from the HOA, but he thought it would be "wiped out" by virtue of the sale. (Yu Deposition, ECF No. 57 at 76.) After Plaintiff bought the Property, the parties had several conversations regarding the Debt.

In addition to the HOA, Plaintiff sues Defendants David A. Dye Co., LPA, ("DADCO"), a law firm that represents the HOA with respect to the collection of defaulted debts, and Omni Community Association Mangers, LLC ("Omni"), the third-party management agent for the HOA. (ECF No. 34 at 3; ECF No. 56 at 2.) Plaintiff alleges that each of the Defendants are liable for (1) violating the Planned Community Law and (2) violating the Fair Debt Collection Practices Act ("FDCPA"). (ECF No. 34 at 7–10.) Plaintiff moves for partial summary judgment

2

as to liability for both claims but requests that the Court schedule a trial as to damages for the alleged FDCPA violations. (ECF No. 60 at 1, 18.) Defendants move for summary judgment on the Amended Complaint in its entirety. (ECF No. 56.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond

with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

In this case, the parties have filed cross-motions for summary judgment. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991) (quoting *John v. State of La. (Bd. of Trs. for State Colls. & Univs.),* 757 F.2d 698, 705 (5th Cir. 1985)). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.,* 929 F.2d at 248.

### III. ANALYSIS

Plaintiff sets forth two causes of action in his Amended Complaint: (1) violation of the Ohio Planned Community Act, and (2) violation of the Fair Debt Collection Practices Act. (ECF No. 34 at 7, 9.)

#### A. Ohio Planned Community Act ("OPCA")

Plaintiff asserts that, pursuant to the OPCA and the HOA's governing documents, the Lien is improperly charged as to Plaintiff because the Debt was accrued by someone other than Plaintiff. (ECF No. 64 at 2.) Plaintiff further asserts that the Lien was invalidated by virtue of the foreclosure sale and doctrine of *lis pendens*. (ECF No. 60 at 17–18). Plaintiff seeks summary judgment on this claim along with an order discharging the Lien, an order requiring the

4

HOA to file a release to the Franklin County Recorder, and an award of attorney fees. (*Id.* at 18.)

Defendants also seek summary judgment on this claim, asserting that Plaintiff cannot establish essential elements of the claim because the Debt and HOA Lien were properly charged for purposes of the OPCA. (ECF No. 56 at 8–9.) While Defendants argue that the Lien survived the foreclosure under applicable state law, they note that Plaintiff has not brought an action to quiet title or for a declaratory judgment and that the Lien's status following the foreclosure is irrelevant to whether Defendants violated the OPCA. (ECF No. 63 at 9–15.) The Court agrees.

The OPCA was established to create "a uniform framework for the operation and management of planned communities in [Ohio] and to supplement any planned community governing document that is in existence on the effective date of this chapter." Ohio Rev. Code § 5312.15 (emphasis added). Among other things, the OPCA provides that an HOA "has a lien upon the estate or interest in any lot" for any unpaid assessments levied in accordance with the HOA's declaration. Ohio Rev. Code §§ 5312.11(A), 5312.12(A). In order to perfect its lien, an HOA must file a certificate of lien with the county recorder. Ohio Rev. Code § 5312.12(B)(1) ("The [HOA lien for unpaid assessments] is effective on the date that a certificate of lien is filed for record in the office of the recorder of the county or counties in which the lot is situated, pursuant to authorization by the board of directors of the owners association.").

The OPCA provides a remedy for liens that stem from unpaid assessments that were improperly charged against an owner. Ohio Rev. Code § 5312.12(D). The statute provides as follows:

> An owner may commence an action for the discharge of the lien in the court of common pleas of the county in which all or a part of the property is situated if the owner believes that the liability for the unpaid assessment or charge for which the owners association filed a certificate of lien was improperly charged. In the action,

5

> if it is finally determined that the unpaid amount of the assessment or charge was improperly charged to the owner or the lot, the court shall enter an order that it determines to be just, which may provide for a discharge of record of all or a portion of the lien and an award of attorney's fees to the owner.

*Id.*

Although the OPCA contains a framework of requirements and restrictions that govern planned communities, it also contains a "conflicts of law" section, in which it states as follows:

> In the event of a specific conflict between this chapter and express requirements or restrictions in such a governing document, the governing document shall control. This chapter shall control if any governing document is silent with respect to any provision of this chapter.

Ohio Rev. Code § 5312.15. Along the same lines, the OPCA elsewhere states that "[n]othing in this chapter invalidates any provision of a document that governs a planned community if that provision was in the document at the time the document was recorded and the document was recorded prior to the original effective date of this chapter." Ohio Rev. Code § 5312.02(C).

Here, Plaintiff seeks an order discharging the Lien, requiring the HOA to file a release to the Franklin County Recorder, and awarding attorney fees pursuant to Ohio Rev. Code § 5312.12(D). (ECF No. 60 at 17–18.) He asserts that the Defendants' efforts to seek payment from him pursuant to the Lien constitute an improper charge because the Property should have been free and clear of all liens and encumbrances following the foreclosure sale. (*Id.*) In response to Defendants' Motion for Summary Judgment on this claim, Plaintiff further asserts that the HOA's governing documents also provide that a purchaser at a foreclosure sale takes the property free and clear of claims for unpaid assessments. (ECF No. 62 at 2.) Specifically, Section 5.5 of the Declaration of Covenants, Easements, Restrictions, Assessments, and Assessment Liens for Reynolds Crossing (the "HOA's Declarations") indicates that unpaid assessments are the "personal obligation of the [o]wners of the [l]ot or [unit]" and that "any

6

purchaser at a foreclosure sale, shall take the property free of any claims for unpaid [a]ssessments against the mortgage [l]ot . . . which became due and payable prior, in the case of foreclosure, to the date of sale." (ECF No. 60-6 at §§ 5.5(b), (d).) Plaintiff contends that, because of the conflicts of law provision of the OCPA, Section 5.5 of the HOA's Declarations controls such that Plaintiff's purchase of the Property should have been free and clear of any liens and therefore this Court should discharge the Lien. (*Id.* at 2–4.)

Plaintiff's contentions are not properly before the Court under the OCPA. The question before the Court is not whether the Lien is valid as a result of the foreclosure action or under the HOA's Declaration. The question before the Court is whether "the liability for the unpaid assessment or charge *for which the owners association filed a certificate of lien* was improperly charged." Ohio Rev. Code § 5312.12(D) (emphasis added). That is, were the original assessments or charges—that went unpaid, prompting the HOA to file a certificate of lien—proper?

Neither Plaintiff nor Defendants cite to any case law on the meaning of "improperly charged" as used in R.C. § 5312.12(D) and the Court has only found one Ohio state court case analyzing the issue. In *Weber v. Shawnee Junction Homeowners Ass'n, Inc.*, the Wood County Court of Common Pleas held that an award of attorney fees under the OPCA was appropriate where "the fees underlying the lien were improperly charged." No. 2014CV0651, 2015 WL 13186442, at *3 (Ohio Com. Pl. Dec. 22, 2015). In that case, the HOA had filed bylaws with the Wood County Recorder as required under Ohio Rev. Code § 5312.02(D)(1). *Id.* at *2. The applicable bylaws did not allow for the enforcement of liens for violations of the declaration of restrictions. *Id.* Even so, the HOA filed a lien against the plaintiffs' property for a violation of the declaration of restrictions. *Id.* The court found that the HOA "lacked authority to charge the

7

fees underlying the lien . . . because the fees were not provided for in the copy of the bylaws recorded with the Wood County Recorder." *Id.* at *3. This, the court found, warranted relief under Ohio Rev. Code § 5312.12(D), as the HOA lacked authority to charge the underlying fees. *Id.*

Much of Plaintiff's arguments with respect to this cause of action relate to the validity of the Lien on the Property following the foreclosure action. Because this issue is not properly before the Court in an action under Ohio Rev. Code § 5312.12(D), the Court makes no findings or conclusions with respect to the validity of the Lien against Plaintiff.

As applied to this case, there is no dispute as to the propriety of the original unpaid HOA assessments and charges under the HOA's Declarations. Plaintiff does not allege that these assessments on the former owner were improperly charged. (*See* ECF No. 34.) The record contains an account statement showing the relevant assessments and charges against the former owner of the Property. (HOA Transaction History, ECF No. 57-10.) Asked about these charges during his deposition, Plaintiff maintained that he does not have any evidence suggesting that *these* charges are improper. (Yu Deposition, ECF No. 57 at 115.) Accordingly, there is no genuine dispute of material fact that can sustain a valid claim under the OPCA. Summary judgment is therefore proper in favor of Defendants on this cause of action.

### B. Fair Debt Collection Practices Act ("FDCPA")

The FDCPA, 15 U.S.C. § 1692, *et seq.*, was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Plaintiff brings FDCPA claims against each Defendant pursuant to §§ 1692e, 1692f, and 1692g. (ECF No. 34 at

8

10.) His Motion for summary judgment as to liability under the FDCPA only references liability under § 1692e, however, so Plaintiff has appeared to abandon his other theories of liability.

> FDCPA § 1692e provides in relevant part as follows:
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (2) The false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> * * *
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

"The purpose of the [FDCPA] is to eliminate abusive debt collection practices by debt collectors." *Kline v. HomEq*, No. 3:07-CV-084, 2008 WL 11351581, at *3 (S.D. Ohio Nov. 25, 2008) (citing 15 U.S.C. § 1692e & *MacDermid v. Discover Fin.Servs.*, 488 F.3d 721, 734–35 (6th Cir. 2007)) (internal quotations omitted). Furthermore, the FDCPA was enacted "to protect consumers from a host of unfair, harassing, and deceptive collection practices without imposing unnecessary restrictions on ethical debt collectors." *Id.* (citing *Staub v. Harris*, 626 F.2d 275, 276–77 (3d Cir. 1980)) (quoting Consumer Credit Protection Act, S. Rep. No. 95-382, at 1–2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696). "The primary goal of the FDCPA is to

protect consumers from abusive, deceptive, and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process." *Id.* (citations omitted).

To establish liability under § 1692e for using false statements in connection with the collection of a debt, (1) a plaintiff must be a consumer as defined by the FDCPA; (2) the debt must be primarily for personal, family, or household purposes; (3) the defendant must be a debt collector as defined by the FDCPA; and (4) the debt collector must have violated § 1692e. *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). All four elements are disputed in this case, but the Court's analysis will focus on the third and fourth elements, as they are dispositive of the claim.

### "Debt Collector" under the FDCPA

For Defendants to be liable under the FDCPA, they must fall within the FDCPA's definition of a "debt collector." The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The definition excludes creditors, defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. §§ 1692a(4), 1692a(6)(A).

Plaintiff brings his FDCPA claim against all three Defendants. Because the HOA is the entity to whom the alleged Debt is owed, it is a creditor and therefore excluded from FDCPA liability. Defendants admit that DADCO meets the definition of a debt collector. (ECF No. 35

at PARA 16.) The parties disagree on whether Defendant Omni is a debt collector subject to FDCPA liability.

Defendants assert that Omni, as a third-party management company for the HOA, is not a debt collector within the meaning of the FDCPA. (ECF No. 56 at 16–18; ECF No. 61 at 4–5; ECF No. 63 at 5–7.) Plaintiff contends that Omni is a debt collector pursuant to its agreement with the HOA because it collects association dues from owners, is entitled to charge and retain late fees against owners, regularly mails communications related to association dues and other charges through the mail. (ECF No. 60 at 8–9.)

Section 1692a(6)(F)(i) of the FDCPA excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F)(i). To be covered by this exemption, the defendant must owe a fiduciary obligation to the party for whom they are performing debt collecting services and the defendant's debt-collection activity must be incidental to that fiduciary obligation.

In *Harris v. Liberty Community Management, Inc.*, the United States Court of Appeals for the Eleventh Circuit held that, although a management company collected unpaid assessments for an HOA, this activity was incidental to its fiduciary obligation to the HOA and thus the management company was not a debt collector under the FDCPA. 702 F.3d 1298, 1302 (11th Cir. 2012). According to the Eleventh Circuit, incidental, "in common parlance, means 'occurring as something casual or of secondary importance.'" *Id.* (citing 1 Shorter Oxford English Dictionary 1343 (5th ed. 2002)). The court then found that the management agreement between the management company and the HOA allocated a wide range of duties beyond debt collection to the management company such that it "did much more than just collect assessments

for the [HOA]." *Id.* Specifically, it also contracted for maintenance of the community's common areas, contracted for utilities (including gas, electricity, and water), purchased insurance, investigated claims, made reports to insurance companies, kept and maintained ledgers and bank accounts, prepared and submitted a budget, deposited money and wrote checks, reconciled monthly bank statements, and assisted the HOA with its yearly tax filings. *Id.* Based on these additional duties and activities that the management company performed, the Eleventh Circuit held that its debt-collection activity was not "central to, or the primary purpose of" its fiduciary obligation to the HOA, and therefore it qualified for the exemption under § 1692a(6)(F)(i). *Id.*

The Eleventh Circuit's analysis on this issue is consistent with Sixth Circuit cases that have applied § 1692a(6)(F)(i). In *Bates v. Green Farms Condominium Association*, the plaintiff sued the homeowner's association and the condominium's management company, Highlander, following a nonjudicial foreclosure of the plaintiff's condominium unit for violating the condominium bylaws. 958 F.3d 470, 479 (6th Cir. 2020). The Sixth Circuit upheld the trial court's dismissal of the Complaint. *Id.* As to Highlander, it noted that "courts have held that managers of condominium or apartment complexes fall within exceptions to the debt-collector definition when acting as agents for the condo or apartment owners." *Id.* at 481. It found that courts "have invoked either an exception covering entities who collect debts 'incidental to a bona fide fiduciary obligation' or one covering entities who collect debts that were not in default when the entities 'obtained' them." *Id.*, citing 15 U.S.C. § 1692a(6)(F)(i), (iii); *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1301–03 (11th Cir. 2012); *Carter v. AMC, LLC*, 645 F.3d 840, 843–44 (7th Cir. 2011); *Raburn v. Wiener, Weiss & Madison*, 2018 WL 2107188, at *4 (M.D. La. May 7, 2018), *aff'd sub nom.* 761 F. App'x 263 (5th Cir. 2019).

Here, the Management Agreement requires Omni to preform a wide range of duties other than debt collection. (Dye Deposition, ECF No. 56-4 at 29–31; Management Agreement, ECF No. 56-1.) The Management Agreement lists the following services: budgeting, invoicing of annual association dues, collecting in the ordinary course of business association dues, securing maintenance provider bids, awarding contracts, overseeing performance of subcontractors, keeping financial records, communicating with homeowners, enforcing deed restrictions, and more. (ECF No. 56-1 at 1–2.) Plaintiff contends that Omni is "engaged in the regular business of collecting debts" and asserts that the Management Agreement establishes that Omni "was contracted to collect monies on behalf of the HOA." (ECF No. 62 at 14.) Plaintiff seems to ignore the evidence of the other services Omni is contractually obligated to perform for the HOA. The Court finds that, based on the text of the Management Agreement itself, the majority of the services Omni provides to the HOA do not relate to debt collection.

This undisputed evidence demonstrates that Omni's debt-collection activity was "incidental to" and not "central to" or "the primary purpose of" its fiduciary obligations to the HOA. As in *Harris*, the Management Agreement between the HOA and Omni obligates Omni to perform a wide range of duties. Omni does "much more than just collect assessments for the [HOA]." *Harris*, 702 F.3d at 1302. The record evidence of Omni's numerous duties and activities unrelated to debt collection demonstrates that its debt-collection activity was "incidental" to—not "central to, or the primary purpose of"—the fiduciary obligation owed to the HOA. Omni is accordingly not a debt collector under § 1692a(6)(F)(i) of the FDCPA.

13

Communications at Issue

Plaintiff alleges that five communications violate § 1692e for making false or misleading representations. (ECF No. 60 at 13.) As to each, Plaintiff alleges that the communication was misleading or deceptive because he does not believe the Debt is collectable against him at all. (*Id.*; ECF No. 64 at 8.) Only two of these communications are from DADCO, the only Defendant who is a debt collector subject to liability under the FDCPA. These communications consist of a February 17, 2016, letter to Plaintiff and a March 28, 2016 letter to Plaintiff's attorney. (ECF No. 60 at 13.)

**1. February 17, 2016 Letter**

Plaintiff asserts that "[o]n or about February 17, 2016, DADCO sent a letter threatening a lawsuit to collect against Mr. Yu unless he made full payment of the debt $4,371.35 to OMNI." (ECF No. 60 at 6.) A copy of the letter is attached to Plaintiff's Motion as Exhibit P. (ECF No. 60-16.) Plaintiff does not describe the particular basis on which he alleges this letter violates the FDPCA apart from his general contention that he does not owe the Debt. (ECF No. 60.) Defendants respond that this is a "garden-variety collection notice" and that, when asked about this letter during his deposition, Plaintiff testified that the statement "you have failed or refused to pay" the Debt was misleading and that the amount stated as due was incorrect. (*Id.*) Additionally, Defendants contend that this letter was sent inadvertently, despite procedures to prohibit its mailing, and that it is therefore subject to the bona fide error defense under § 1692k(c).

Section 1692k(c) provides as follows:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

14

15 U.S.C. § 1692k(c).  "To qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error."  *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir. 2009) (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476–77 (6th Cir. 2008)).  This "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution."  *Charbonneau v. Mary Jane Elliott, P.C.,* 611 F. Supp. 2d 736, 743 (E.D. Mich. 2009) (citing *Kort v. Diversified Collection Servs.*, 394 F.3d 530, 539 (7th Cir. 2005)).

> This Court previously described these elements as follows:
>
> As to the first prong, the Sixth Circuit has held that the bona fide error defense requires only negation of specific intent.  *Johnson v. Riddle,* 443 F.3d 723, 729 (10th Cir. 2006).  That is, the defendant must show that it did not intend to violate the FDCPA, not that it did not intend to make the communication.  As to that issue, the Court looks to the subjective intent of the debt collector. . . .  As to the second element of the defense, this Court has explained that a bona fide error is one that is made in good faith; inadvertently; without fraud or deceit.  *Edwards v. McCormick,* 136 F. Supp. 2d 795, 800 (S.D. Ohio 2001) (citing Black's Law Dictionary 168 (7th ed. 1999)).  The third element, the procedures prong, by the express language of the statute, must be "reasonably adapted to avoid" the error that occurred.  15 U.S.C. § 1692k(c).

*Durthaler v. Accounts Receivable Mgmt., Inc.,* 854 F. Supp. 2d 485, 493–94 (S.D. Ohio 2012).

In his deposition, David Dye testified that DADCO's software for tracking homeowners' accounts had an internal note next to Plaintiff's address indicating that no communication should be sent.  (ECF No. 56-4 at 131–134.)  When Plaintiff updated his address in the system, the software recalculated the time period for a warning letter to be sent.  (*Id.*)  Mr. Dye stated that the letter "never should have been sent."  (*Id.* at 132.)  Plaintiff contends that this was not a

15

miscoding error but instead is a flaw in DADCO's software system, which he states is "clearly not reasonably adapted" to avoid these types of notices being sent. (ECF No. 62 at 19.)

The Court finds that the preponderance of the undisputed evidence establishes all three elements such that the bona fide error exception applies even if this communication constituted an FDCPA violation. Mr. Dye's testimony establishes that DADCO did not intend to violate the FDCPA. (ECF No. 56-4 at 132.) The preponderance of the evidence also shows that the error was not made with fraud or deceit but was the result of an error in the software system. (*Id.* at 131–34.) Finally, the undisputed evidence—that is, Mr. Dye's testimony regarding the software program—establishes that DADCO had taken "reasonable precaution" in creating a system designed to stop communications to certain homeowners in order to comply with the FDCPA. *Id.*; *Charbonneau*, 611 F. Supp. 2d at 743. Plaintiff has failed to raise a genuine issue of material fact regarding any element of this defense. Instead, his primary argument consists of a conclusory statement that DADCO's software system was "clearly not reasonably adapted" to prevent the communication. (ECF No. 62 at 19.) The Court finds that, even if this communication constituted a violation of the FDCPA, a preponderance of the evidence shows that the violation was unintentional, was in error, that DADCO's procedures are reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c); *Hartman*, 569 F.3d at 614. Accordingly, summary judgment in favor of Defendants is proper as to this theory of FDCPA liability for this communication.

2.  **March 28, 2016 Letter**

The second communication from DADCO that Plaintiff contends is misleading or deceptive under the FDCPA is a March 9, 2016, letter from David Dye addressed to Angel Poynter of the Poynter Law Firm, LLC. (ECF No. 60 at 6.) A copy of this letter is attached to Plaintiff's Motion as Exhibit R. (ECF No. 60-18.) Again, Plaintiff does not point to any particular text of this letter that

16

he contends was itself misleading. Instead he asserts that any collection efforts for this Debt are misleading because he does not owe the Debt. (ECF No. 60.) Defendants assert that nothing in the letter is deceiving or misleading, and further note a split in authority in this Court as to the general issue of whether a debt collector's communication with an attorney is subject to FDCPA liability. (ECF No. 56 at 22–25, citing *Kline v. Mortgage Elec. Sec. Sys.*, 659 F. Supp. 2d 940 (S.D. Ohio 2009); *Hagy v. Demers & Adams, LLC*, No. 2:11-CV-530, 2011 WL 6091797 (S.D. Ohio Dec. 7, 2011).)

In *Kline*, the Court adopted the Ninth Circuit's approach as discussed in *Guerrero v. RJM Acquisitions LLC*, 499 F. 3d 926, 936–37 (9th Cir. 2007 (per curium), and held that the FDCPA does not govern communications between debt collectors and a debtor's attorney. *Kline*, 659. F. Supp. at 947–49. In *Hagy*, the Court acknowledged this precedent but instead adopted the Seventh Circuit's approach as articulated in *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769 (7th Cir. 2007), reasoning that nothing in the text of the FDCPA excludes communications with counsel if the other elements of an FDCPA claim are established. *Hagy*, 2011 WL 6091797, at *4–5.

The Court today makes no finding as to this split in authority because, even if the FDCPA is actionable against a debtor's attorney, the undisputed facts as to this communication do not establish an FDCPA violation. According to *Evory*, the Seventh Circuit opinion on which this Court in *Hagy* found that the FDCPA does *not* exclude communications with a debtor's attorney, courts should employ a heightened "competent lawyer" standard to analyze this type of communication. *Evory*, 505 F.3d at 775 ("[A] representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable.")

Here, nothing in the March 28, 2016, could reasonably be construed as misleading or deceptive, especially not to a competent lawyer. (*See* March 18, 2016 DADCO Letter, ECF No. 60-18.) First, the letter is in response to a communication from Plaintiff's counsel, Ms. Poynter, and appears to follow a telephone conversation between the two attorneys. (*Id.*; March 9, 2016 Poynter

17

Letter, ECF No. 60-17.)  In the letter, Ms. Poynter writes "to dispute the debt" because it is their position that "COA assessments are personal debts belonging to homeowners."  (ECF No. 60-17.)  Ms. Poynter asks Mr. Dye to cease collecting on the Debt and lays out her legal theory of why the Debt is not collectable from Plaintiff.  (*Id.*)  Mr. Dye's response—the communication at issue here—directly responds to that legal theory outlined by Plaintiff's counsel and explains why Mr. Dye believes the Debt to be collectable against Plaintiff.  (ECF No. 60-18.)  Again, the Court need not make any conclusions as to the collectability of the Debt against Plaintiff because no reasonable jury could conclude that the undisputed evidence, here, the March 18, 2016 DADCO letter in response to Plaintiff's counsel's letter, is abusive, misleading, or deceptive.  The responsive letter "would be unlikely to deceive a competent lawyer," and is therefore not actionable even if communications with an attorney can implicate FDCPA liability.  *Evory*, 505 F.3d at 775.  Accordingly, Defendants are entitled to judgment as a matter of law on the FDCPA claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 56) is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 60) is **DENIED**.  The Clerk is **DIRECTED** to enter judgment in favor of Defendants and to terminate this case.

**IT IS SO ORDERED.**


Date: September 8, 2020                       /s/ *Elizabeth A. Preston Deavers*
                                                                                  ELIZABETH A. PRESTON DEAVERS
                                                                                  CHIEF UNITED STATES MAGISTRATE JUDGE